NO. 12-04-00219-CV
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
THE STATE OF TEXAS FOR                          §                 APPEAL FROM THE 
 
THE BEST INTEREST AND                           §                 COUNTY COURT AT LAW
 
PROTECTION OF T.L.                                     §                 CHEROKEE COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            Appellant T.L. appeals from an order authorizing the Texas Department of Mental Health
and Mental Retardation (“Department”) to administer psychoactive medications. In two issues, T.L.
asserts the evidence is legally and factually insufficient to support the trial court’s order and that
forcibly administering psychoactive drugs to T.L. in violation of her religious beliefs is
unconstitutional. We affirm.
 
Background
            On June 16, 2004, an application for an order to administer psychoactive medication was
signed by Dr. S. Srinivasan. In the application, Srinivasan stated that T.L. was subject to an order
dated June 14 for temporary inpatient mental health services under Section 547.034 of the Texas
Health and Safety Code. Srinivasan stated that T.L. had been diagnosed with bipolar I disorder and
that he wanted the trial court to compel T.L. to take three psychoactive medications: an
antidepressant, an anxoilytic/sedative/hypnotic, and a mood stabilizer. Srinivasan stated that T.L.
verbally refused to take the medications voluntarily and that he believed T.L. lacked the capacity to
make a decision regarding administration of psychoactive medications because she is psychotic.
Srinivasan determined that these medications are the proper course of treatment for the patient and
that, if she were treated with the medications, her prognosis would be fair. However, Srinivasan
believed that, if T.L. is not administered the medications, her mental health will deteriorate. Further,
Srinivasan considered other medical alternatives to psychoactive medication, but determined that
those alternatives would not be as effective. Moreover, Srinivasan believed that the benefits of the
psychoactive medications outweighed the risks in relation to present medical treatment and T.L.’s
best interest. 
            On June 22, the trial court held a hearing on the application. Dr. Satvajeet Lahiri testified
that he reviewed Srinivasan’s application and stated that T.L. is currently under an order for
temporary mental health services. Further, he stated that he met and interviewed T.L., that she
refused to voluntarily accept medications, and that he believed she lacks the capacity to make a
decision regarding the administration of psychoactive medications. Lahiri agreed with Srinivasan’s
diagnosis that T.L. is mentally ill and suffers from bipolar I disorder. By a trial amendment, Lahiri
added an antipsychotic medication to Srinivasan’s application. Lahiri testified that all the
medications are in the proper course of treatment and that treatment with these medications is in
T.L.’s best interest. In fact, Lahiri testified that T.L. would benefit from use of these medications,
that the benefits outweigh the risks, and that T.L.’s hospital stay would likely be shortened. 
            On cross-examination, Lahiri admitted discussing the possible use of medications with T.L.
who, to a limited extent, understood the nature of the conversation. At each discussion, T.L. refused
medications, indicating she is Rastafarian.


 Lahiri testified that T.L. also stated that she believes in
Buddhism and believes the medications are against her religion. However, Lahiri does not know if
T.L. indicated that her objection was to manmade medications. Lahiri testified that there are no
natural alternatives to the proposed medications that would render the same or similar results.
Further, Lahiri stated that T.L.’s condition has, more or less, remained the same with periods of
agitation and disorganized behavior. At times, the hospital has had to administer emergency
psychotropic medications to T.L., including the day before the hearing. After these medications were
administered, T.L.’s condition improved dramatically. Lahiri testified that, when he treated T.L.
previously, she took medications and improved. At the time of the hearing, T.L. had rejected all
manmade medications.
            On redirect examination, Lahiri stated that, on admission, T.L. indicated she was Rastafarian,
but did not elaborate on what that meant in reference to treatment. T.L. also signed a consent upon
admission for antipsychotics and antidepressants. Further, T.L. expressed her belief in Buddhism,
but did not elaborate whether Buddhists refuse medications. On recross-examination, Lahiri testified
that, although T.L. initially consented to medications, she refused medications in the middle of her
hospital stay. Lahiri admitted he did not know T.L.’s clinical “picture” at the time she refused these
medications. Lahiri also testified on recross examination that he believed T.L. understood their
conversation regarding medications and, in fact, took time to think about it because she did not
consent immediately. On admission, T.L. did not express religious objections to the medications. 
            T.L. testified that she did not recall a conversation with Lahiri about the use of medications
or signing a consent for manmade psychiatric medications. If she did consent, T.L. stated, she was
“bamboozled.” She recalled that Lahiri spoke to her on the day of the hearing about a request for
access to antidepressants, sedatives, and mood stabilizers. T.L. testified that she cannot “do that,”
that she does not need the medications, and that there are other ways to control her problems. She
stated that she has clairvoyance and has been diagnosed with “P.H.Y.C.H.C.Y.C.,” but that “Texas
does not know how to deal with” it. T.L. stated that she is Rastafarian and that members of the
religion do not believe in manmade medicines, but declared that herbs can take care of their needs. 
Moreover, T.L. testified that these medications affect her kidneys and unborn children. Then, T.L.
alleged that the hospital gives psychics lethal injections and stated that “Karma goes out to the
universe.” According to T.L., forcing a person with Rastafarian beliefs to take psychoactive
medications would be like forcing a Buddhist to eat ham. T.L. stated that she is a Virgo, acts normal,
is on close observation, and alleged that the day before the hearing, for no reason, she was given a
needle while eating breakfast. During the hearing, T.L. interrupted Lahiri’s testimony several times
and, during her testimony, attempted to speak directly to Lahiri.
            At the close of the evidence, the trial court granted the application. On June 22, after
considering all the evidence, including the application and the expert testimony, the trial court found
that the allegations in the application were true and correct and supported by clear and convincing
evidence. Further, the trial court found that treatment with the proposed medication was in the best
interest of T.L. and that T.L. lacked the capacity to make a decision regarding administration of the
medication. The trial court authorized the Department to administer psychoactive medications to
T.L., including antidepressants, mood stabilizers, and anxiolytics/sedatives/hypnotics. This appeal
followed.
 
Sufficiency of the Evidence
            In her first issue, T.L. argues that the evidence is legally and factually insufficient to support
the trial court’s order to administer psychoactive medications. More specifically, T. L. contends that
the State did not meet its burden of proof because it failed to show (1) that she lacked the capacity
to make a decision regarding administration of the medication, (2) that the proposed medication
would benefit her other than to shorten her hospital stay, (3) that she posed harm to herself or anyone
else if not medicated, (4) that her condition was significantly deteriorating without the use of the
medications, and (5) that the trial court considered her religious beliefs. 
Standard of Review
            In a legal sufficiency review where the burden of proof is clear and convincing evidence, we
must look at all the evidence in the light most favorable to the finding to determine whether a
reasonable trier of fact could have formed a firm belief or conviction that its findings were true. In
re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the fact finder settled disputed
facts in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a
reasonable fact finder could have disbelieved or found incredible. Id. This does not mean that we
are required to ignore all evidence not supporting the finding because that might bias a clear and
convincing analysis. Id. 
            The appropriate standard for reviewing a factual sufficiency challenge is whether the
evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth
of the petitioner’s allegations. In re C.H., 89 S.W.3d 17, 25 (Tex. 2002). In determining whether
the fact finder has met this standard, we consider all the evidence in the record, both that in support
of and contrary to the trial court’s findings. Id. at 27-29. Further, we must consider whether
disputed evidence is such that a reasonable fact finder could not have reconciled that disputed
evidence in favor of its finding. In re J.F.C., 96 S.W.3d at 266. If the disputed evidence is so
significant that a fact finder could not reasonably have formed a firm belief or conviction, then the
evidence is factually insufficient. Id. 
Order to Administer Psychoactive Medication
            A trial court may issue an order authorizing the administration of one or more classes of
psychoactive medications only if the trial court finds by clear and convincing evidence after the
hearing that (1) the patient is under an order for temporary or extended mental health services, (2)
the patient lacks the capacity to make a decision regarding the administration of the proposed
medication, and (3) treatment with the proposed medication is in the best interest of the patient. 
Tex. Health & Safety Code Ann. § 574.106(a) (Vernon 2003). “Capacity” means a patient’s
ability to (1) understand the nature and consequence of a proposed treatment, including the benefits,
risks, and alternatives to the proposed treatment, and (2) make a decision whether to undergo the
proposed treatment. Tex. Health & Safety Code Ann. § 574.101(1) (Vernon 2003). In making
its findings, the trial court shall consider (1) the patient’s expressed preferences regarding treatment
with psychoactive medication, (2) the patient’s religious beliefs, (3) the risks and benefits, from the
perspective of the patient, of taking psychoactive medication, (4) the consequences to the patient if
the psychoactive medication is not administered, (5) the prognosis for the patient if the patient is
treated with psychoactive medication, and (6) alternatives to treatment with psychoactive medication. 
Tex. Health & Safety Code Ann. § 574.106(b) (Vernon 2003). 
Analysis
            In the application, Srinivasan stated that T.L. was subject to an order for temporary mental
health services, that he believed she lacked the capacity to make a decision regarding administration
of psychoactive medications because she is psychotic, and that these medications are in her best
interest. Further, Srinivasan determined that, if T.L. were not administered these medications, her
mental health would deteriorate. Although Srinivasan considered other medical alternatives to
psychoactive medication, he concluded these alternatives would not be as effective and further
determined that the benefits of these medications outweighed the risks. At the hearing, Lahiri
testified that T.L. was subject to an order for temporary mental health services, that he believed she
lacked the capacity to make a decision regarding the administration of psychoactive medications, and
that treatment with these medications is in T.L.’s best interest. Lahiri testified that T.L. would
benefit from use of these medications, likely resulting in a shorter hospital stay, and that the benefits
outweighed the risks. In fact, Lahiri testified that when T.L. was administered these medications,
her condition improved dramatically. Further, Lahiri determined that there are no natural alternatives
to these medications that would render the same or similar results. Considering all the evidence in
the light most favorable to the findings, we conclude a reasonable trier of fact could have formed a
firm belief or conviction that T.L. lacked the capacity to make a decision regarding administration
of the proposed medications and that treatment with the proposed medications was in her best
interest. See Tex. Health & Safety Code Ann. § 574.106(a); In re J.F.C., 96 S.W.3d at 266.
Therefore, the evidence is legally sufficient to support the trial court’s order. See In re J.F.C., 96
S.W.3d at 266. 
            Having determined that the evidence is legally sufficient to support the finding, we address
factual sufficiency and consider all of the evidence, both in support of and contrary to the trial court’s
findings. See In re C.H., 89 S.W.3d at 27-29. According to Lahiri, T.L. initially consented to
antipsychotics and antidepressants upon admission to the hospital, never expressing religious
objections to the medications. In fact, Lahiri believed T.L. understood their conversation regarding
the medications and took time to consider consenting to the medications. After her admission, Lahiri
admitted that T.L. refused the proposed medications, indicating that she was Rastafarian. Further,
T.L. expressed her belief in Buddhism, but did not state whether Buddhists refuse manmade
medications. In opposition to the doctor’s testimony, T.L. denied consenting to any manmade
psychoactive medications. She testified that she does not need the medications, that there are other
ways to control her problems, and that the medications will affect her kidneys and unborn children.
Further, T.L. declared that she was Rastafarian and that members of the religion do not believe in
man made medications. The trial court was entitled to disbelieve T.L. and disregard the evidence
contrary to the State’s position. See In re J.F.C., 96 S.W.3d at 266. Further, the trial court is not
required to defer to T.L.’s preferences and beliefs, but must consider them. See Tex. Health &
Safety Code Ann. § 574.106(b). Because T.L. presented evidence to the trial court of her
preference to avoid manmade medications based upon her Rastafarian beliefs, we assume that the
trial court gave her preferences and beliefs due consideration. Based upon our review of the record
as a whole, we conclude that, although there is some disputed evidence, this evidence is not so
significant that a reasonable trier of fact could not have reconciled this evidence in favor of its
finding and formed a firm belief or conviction that T.L. lacked the capacity to make a decision
regarding administration of the proposed medications and that treatment with the proposed
medications was in her best interest. See Tex. Health & Safety Code Ann. § 574.106(a), (b); In
re J.F.C., 96 S.W.3d at 266. Therefore, the evidence is factually sufficient to support the trial court’s
order. See In re C.H., 89 S.W.3d at 25. Accordingly, we conclude that the trial court met the
obligations imposed by Section 574.106 of the Texas Health and Safety Code and overrule T.L.’s
first issue.
 
Constitutional Claims
            In her second issue, T.L. contends that the trial court erred in ordering psychoactive
medications forcibly administered to her in violation of her freedom of religion protected by the First
Amendment to the United States Constitution and guaranteed by the Fourteenth Amendment.
Moreover, T.L. argues that, despite an order committing her to a mental health facility, she
maintained her rights of due process and freedom of religion under the United States Constitution
and the constitution of the State of Texas. 
            In order to present an issue for appellate review, the record must show that a complaint was
made to the trial court by a timely request, objection, or motion. Tex. R. App. P. 33.1(a)(1). The
request, objection, or motion must state the grounds for the ruling that the complaining party sought
from the trial court with sufficient specificity to make the trial court aware of the complaint. Tex.
R. App. P. 33.1(a)(1)(A). Additionally, the point of error on appeal must correspond to the motion
made at trial. In re T.R.S., 931 S.W.2d 756, 758 (Tex. App.–Waco 1996, no writ). A trial motion
stating one legal theory may not be used to support a different legal theory on appeal. Id. 
            At the beginning of the hearing, T.L. moved for the application to be dismissed on
constitutional grounds as follows:
 
“A,” that the statute allows for the substitution of different medications, as well as different doses of
medication, without further court review, thereby denying a patient due process of law; “B,” the statute
fails to provide for any supersedeas rights to a patient, thereby denying the patient due process of law
and equal protection of the law; “C,” the statute is unconstitutionally vague and ambiguous in that it
fails to properly define the term, quote, “capacity,” close quote, and the phrases, quote, “ability to
make a decision,” close quote, and quote, “capacity to make a decision,” close quote, and, quote,
“other acts,” close quote; “D,” the statute allows for the arbitrary imposition of involuntary medication
without setting forth any standards by which a court of review may consider the sufficiency of the
evidence in support of the decision and thereby denies a patient due process of law and equal
protection of the law.


            The trial court overruled T.L.’s constitutional objections. On appeal, T.L. contends that the
trial court violated her constitutional right of freedom of religion by forcibly administering
psychoactive medications. However, she made no such objection at trial. Consequently, we
conclude that T.L.’s complaint on appeal does not comport with the motion she made during the
hearing and, therefore, she has failed to preserve error. See id. 
            Further, T.L. contends that she maintained her rights of due process even though she was
committed to a mental health facility. An appellant’s brief must contain a clear and concise argument
for the contentions made, with appropriate citation to authorities and to the record. Tex. R. App. P.
38.1(h). However, T.L.’s due process argument is brief and conclusory, includes only minimal
citation to authorities, and includes no record references. Additionally, T.L. fails to describe how
her constitutional due process rights were violated by the trial court. Therefore, T.L. also waived
this issue. See Tex. R. App. P. 38.1(h). 
             Accordingly, we overrule T.L.’s second issue.
 
Disposition
            Having overruled T.L.’s first and second issues, the judgment of the trial court is affirmed.
                                                                                                   JAMES T. WORTHEN 
                                                                                                               Chief Justice
Opinion delivered November 24, 2004.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.

(PUBLISH)